[No. 12364.  Department Two.  November 21, 1914.]

THE STATE OF WASHINGTON, *on the Relation of W. G. Hellar, Plaintiff,* v. C. R. JACKSON *et al., Respondents.*[1]

TAXATION—RAILROADS—APPORTIONMENT OF OPERATING REAL PROPERTY—STATUTES—CONSTRUCTION.  A "line" of railroad owned and operated by one railroad company, but leased to another railroad company under a joint user contract, is not subject to apportionment for taxation against the lessee as well as the lessor, since the intent of the legislature to restrict the apportionment to lines actually owned, as far as real property is concerned, is evident under the terms of Rem. & Bal. Code, § 9151, providing that "it shall be the duty of the state board of tax commissioners to apportion the value of the operating properties of such railroad to the county or counties through or into which the lines thereof may extend, according to the classification and value thereof in such proportion as the length of the line in each county may bear to the entire length of line within the state," in view of Id., § 9152, classifying operating property into real property and personal property, the former comprising all the land occupied and claimed exclusively as the right of way for railroads, with all the tracks, side tracks, depots, or other buildings belonging to the road, used in the operation thereof.

SAME—LEASE.  A lease of a railroad right of way and lines for 999 years would not constitute the lessee an owner of the land or of an interest in the railway, since the ownership of the fee still inheres in the lessor (although the period of the term substantially amounts to a grant in perpetuity).

Application filed in the supreme court October 9, 1914, for a writ of mandate to the state tax commission to compel an apportionment of certain railroad property for the purposes of taxation.  Denied.

*J. T. S. Lyle,* for relator.

*The Attorney General* and *Edward W. Allen, Assistant,* for respondents.

*Lorenzo Dow* and *A. B. Comfort, amici curiae.*

[1]Reported in 144 Pac. 48.

MOUNT, J.—This is an application for a writ of mandate to compel the state board of tax commissioners to apportion for purposes of taxation the equalized value of certain railroads according to the classification of such railroads "in such proportion to the entire value thereof, as the length of the line in each county may bear to the entire length of line within the state."

There is no dispute upon the facts. It appears from the record that the Northern Pacific Railway Company owns and operates a double track line of railway from the city of Seattle to the city of Vancouver, in this state. The Oregon-Washington Railroad & Navigation Company and the Great Northern Railway Company have a long term lease of the right to run trains over this line of the Northern Pacific Railway Company. According to the terms of this lease, as stated in the affidavit of the relators, the agents at each station along the road are joint agents of the Oregon-Washington Railroad & Navigation Company, the Great Northern Railway Company, and the Northern Pacific Railway Company, but the taxes, cost of improvements, operation and maintenance are divided equally between them. Each company operates its own engines and trains for passengers and freight, and their own crews, under the orders and directions of the Northern Pacific Railway Company.

It also appears that the Northern Pacific Railway Company in Pierce county owns side tracks and switches of about seventy miles in length. The Great Northern owns about three miles of side tracks in Pierce county. The Oregon-Washington Railroad & Navigation Company owns about one mile of side tracks. Each of these companies also owns, in its own right, certain terminals in that county. The two last named companies own lines of railway outside of Pierce county and not contiguous thereto.

Other railroads operated through Pierce county have the same arrangements among themselves as the Northern Pa-

cific, the Great Northern and the Oregon-Washington Railroad & Navigation Company have, as above stated.

The state board of tax commissioners made an assessment of all railroad property in the state under the provisions of ch. 78 of the Laws of 1907, p. 132 (Rem. & Bal. Code, § 9141 *et seq.*). This assessment was returned to the state board of equalization for the year 1914 and was equalized by that board. Thereafter the state board of tax commissioners was about to apportion the value of the properties of these railroads to the different counties of the state, and was about to apportion the value of the operating property of each railroad to the county or counties through or into which the lines thereof extended according to the classification and value thereof in such proportion to the entire value thereof as the length of the line owned in each county bears to the entire length of line owned within the state.

No question is made upon the assessment of the property of the railroads. The rolling stock and other movable property belonging to each road was apportioned by the tax commission to each county in the state in proportion to the mileage operated in each county over which the respective roads operated their line, whether it owned its track or leased it. No question is made by the relator upon the correctness of this apportionment.

The sole question in the case is whether, in making the apportionment of the operating real property, the respondents must include, as part of the lines in Pierce county, the mileage operated by the Great Northern Railway Company and the Oregon-Washington Railroad & Navigation Company over tracks not owned in fee by them but operated under a joint-user contract.

According to § 12 of the chapter providing for the assessment of railroads, Laws of 1907, p. 139 (Rem. & Bal. Code, § 9152), the operating property of railroads is divided into two classes: "All land occupied and claimed exclusively as

the right of way for railroads, with all the tracks, and substructures and superstructures which support the same, together with all sidetracks, second tracks, turn-outs, station houses, depots, roundhouses, machine shops, or other buildings belonging to the road, used in the operation thereof" are classed as "real property." The "rolling stock and other movable property" belonging to any railroad company is classed as "personal property" and assessed as such.

Section 11 (Id., § 9151) of the same act provides:

"On the completion of the equalization of the property of the railroad companies and other property in the state, by the state board of equalization it shall be the duty of the state board of tax commissioners, to apportion the value of the operating properties of such railroad, to the county or counties through or into which the lines thereof may extend, according to the classification and value thereof, in such proportion to the entire value thereof, as the length of the line in each county may bear to the entire length of line within the state."

It is argued by the relator, in substance, that the words "lines" and "line" as used in § 11 (Id., § 9151) above quoted, means the lines operated as well as owned; and that, inasmuch as there are about seventy miles of line in Pierce county owned by the Northern Pacific Railway Company, and inasmuch as all this line is used by each of these three railway companies, in apportioning the assessment to Pierce county and other counties similarly situated, the apportionment should be made on the basis of the whole seventy miles to each company instead of upon the basis of the length of line owned by each company. In other words, the relator is claiming that, in Pierce county, instead of making the apportionment upon the basis of the lines actually owned, each company should be considered as owning the entire seventy miles. We are satisfied that the word "line" as used in § 11 (Id., § 9151) means line actually owned. It is used with reference to the real properties of the railroad companies. We think it was the intention of the legislature in passing

this act that the apportionment of property classified as real property should be made to each county in the ratio that the length of line owned in each county bears to the entire length of line owned within the state. To construe this section otherwise would be to say, in effect, that, in a county where three railways are operated over the same line, such county would be entitled to an apportionment of the assessed valuation for taxation upon three times the amount of line actually there, while in a county where there are two or more competing lines parallel with each other, such county would receive an apportionment upon the actual mileage only. We think the legislature did not intend such result.

It is also argued by the relator that, inasmuch as the leases from the Northern Pacific Railway Company to the Oregon-Washington Railroad & Navigation Company and the Great Northern Railway Company extend for a period of 999 years, that these lessees, in substance, own an interest in the railway. As a matter of fact, this contention may be correct. But, as a matter of law, the lessees do not own the fee and are not owners of the road. They are simply lessees for a given time. In determining the value of the real property itself, the board of tax commissioners are authorized to consider the gross earnings of railroad companies from operation, income from operation, and income from sources from the whole system, and in this state, and the entire gross earnings of such companies in the state of Washington, for each and every month, for each calendar year. Subdivisions 17 and 18 of § 5 (Rem. & Bal. Code, § 9145). The income of the Northern Pacific Railway Company from the leases of other companies is considered by the tax commission, and presumably the value of the road, as a part of the real estate of the Northern Pacific Railway Company, is assessed upon the valuation so determined. So that the state and the counties through which that road runs obtain the benefit of those leases in the valuation which is fixed upon the road. We are satisfied, therefore, that the apportionment about to

be made by the tax commission is the proper one under the statute, and the writ is therefore denied.

CROW, C. J., PARKER, MORRIS, and FULLERTON, JJ., concur.